## **Exhibit F**

(Lease Agreement)

## LEASE AGREEMENT

THIS LEASE AGREEMENT ("Lease") is made effective as of the and entered into this 1st day of August, 2021 by and between **4274 COLBY, LLC**, a Kentucky limited liability company ("Landlord"), 4274 Colby Road, Winchester, Kentucky 40391, and **AVF CBD, LLC**, a Delaware limited liability company ("Tenant"), 4274 Colby Road, Winchester, Kentucky 40391.

## WITNESSETH:

## ARTICLE 1. LEASED PREMISES

Landlord, for and in consideration of the payment of rent and the covenants and conditions to be performed by Tenant, does hereby demise and lease to Tenant certain buildings and agricultural areas identified on Schedule A attached hereto and incorporated herein (the "Leased Premises") and the non-exclusive right to use and enjoy all driveways, parking areas, sidewalks, landscaping, and improvements located on or within that certain tract of real property known and designated as 4274 and 4330 Colby Road, Winchester, Clark County, Kentucky (the "Real Property"). The Real Property is more particularly described in Schedule B, attached hereto and incorporated herein. Tenant will have the first right of refusal on all other areas of the Property as other tenants and occupants vacate the property on the same terms and conditions outlined in Schedule A and B of this Agreement.

As a part of the Leased Premises, Tenant and Tenant's customers, employees, agents and invitees shall have a nonexclusive right and easement to lawfully use all roadways, driveways, parking lots, service driveways, sidewalks, access easements, and other right-of-ways and/or common areas ("Common Areas") for ingress and egress to and from and within the Real Property, subject to such rules, restrictions and regulations as Landlord may designate from time to time.

Landlord and Tenant agree and acknowledge that Tenant's use of the Common Areas of the Real Property shall be non-exclusive and that Landlord is retaining certain privileges and rights of possession in and to the Real Property and simultaneously granting non-exclusive rights in and to the Common Areas to other Tenants. The use and possession, as well as the respective obligations of Landlord and Tenant, relating to the Leased Premises are further described on Schedule A attached hereto and incorporated herein.

Tenant acknowledges that it has had an opportunity to inspect the Leased Premises and accepts same in its AS IS, WHERE IS condition. Landlord makes no warranties express or implied about the condition or usefulness of the Leased Premises or any part or portion thereof.

## ARTICLE 2. TERM

The initial term of this Lease shall commence on the 1st day of August, 2021, (the "Commencement Date"), and shall end at midnight on December 31, 2021, ("the Expiration Date").. All rights and obligations of Landlord and Tenant shall commence on the

Commencement Date. Tenant shall have the right to continue the Lease on a monthly basis at Tenant's option with 30 days advance notice, provided Landlord has not given notice that Tenant must vacate the premises, giving a sixty (60) day advance notice.

## ARTICLE 3. RENT AND OTHER PAYMENTS

Beginning with the Commencement Date, Tenant agrees to pay to Landlord, without notice or demand, monthly rent in the amounts set forth on Schedule A as ("Base Rent"), in advance on the first day of each month, during the initial term.

All Base Rent payable hereunder shall be net to Landlord, so that this Lease shall yield to Landlord the Base Rent specified during the initial term and any renewal term(s).

In addition to Base Rent, Tenant shall pay to Landlord, Additional Rent, consisting of Tenant's Proportionate Share of (i) all Occupancy Costs as defined hereinafter; (ii) all Taxes as hereinafter defined; and (iii) all excise, transaction, privilege, license, sales, use and other taxes ("Sales Taxes") upon the rental or other payments to Landlord pursuant to this Lease, except for any tax upon or measured by the net income and profits of Landlord. Tenant shall pay all Additional Rent monthly and as soon as reasonably possible after all Occupancy Costs, Taxes and Sales taxes have been determined for the preceding month.

For purposes of this Lease, "Occupancy Costs" shall be defined as costs incurred exclusively for the benefit of a building, agricultural area or other improvement listed as part of the Leased Premises on Schedule A, including specifically but not exclusively, those Occupancy Costs listed on Schedule A.

For purposes of this Lease, "Taxes" shall be defined as real and personal property taxes attributable to buildings, improvements or personal property, fixtures and equipment used exclusively by Tenant for or within the Leased Premises.

All taxing authorities and other assessment creditors shall be instructed to send invoices to Landlord. After recording the information on such invoices, Landlord shall forward such invoices to Tenant for payment. Within 30 days after each tax and assessment payment is required by this Section to be paid and upon request of Landlord, Tenant shall provide Landlord with evidence satisfactory to Landlord that such payment was made in a timely fashion. Tenant may in good faith seek a refund, rebate or abatement of any tax or other assessment levied in connection with the Leased Premises but only if Landlord has approved of the arrangements for paying such tax prior to it becoming a lien on the Leased Premises or Real Property.

All Base Rent payments will be offset by Tenants pre-approved cost of occupancy to ensure that space will be suitable to Tenants business operations, including but not limited too cleaning costs, plumbing, flooring improvements, enclosures, ceiling upgrades/improvements, and other approved expenditures. Such expenditures shall not exceed the monthly Base Rents combined for the duration of the lease.

2

In the event Tenant fails to pay Base Rent, Additional Rent or any other payments due from Tenant hereunder in full within ten (10) days after due, such obligation shall automatically, and without limitation to Landlord's other remedies hereunder, accrue interest at the rate of eight percent (8%) per year for so long as the overdue amount remains unpaid from the day on which such amount was first due and payable.

### ARTICLE 4. USE OF PREMISES

Tenant's use of the Leased Premises shall comply with all federal, state, county, and city laws, ordinances and regulations; all title conditions and restrictions applicable to the Real Property; and all rules, regulations and restrictions imposed from time to time, by Landlord.

### ARTICLE 5. LANDLORDS RIGHT OF ENTRY AND INSPECTION

Tenant acknowledges and agrees that Landlord and its agents, employees or contractors shall have full time access to all areas of the Leased Premises, for reasonable inspections from time-to-time and in the event of an emergency.

Landlord acknowledges and agrees that Tenant's property, inventory and records are trade secrets of the utmost importance and that Landlord shall not interfere with Tenant's activities or allow any third party access to the Leased Premises without the prior express consent of Tenant and that Landlord will not exercise any inspection rights that Tenant believes will jeopardize the security of Tenant's trade secrets.

### ARTICLE 6. UTILITIES AND TRASH REMOVAL

Tenant shall pay for all fuel, gas, oil, heat, water, electricity, power and communication services and other utilities which may be furnished to or used in or about the Leased Premises during the term of this Lease and any renewals or holdovers thereof; and the removal and disposal of all trash and refuse from the Leased Premises during the term of this Lease and all renewals and holdovers thereof.

### ARTICLE 7. ASSIGNMENTS AND SUBLEASES

Tenant shall have no right to assign this Lease, or any interest therein, or to sublet the Leased Premises, or any part thereof, without the prior written consent of Landlord, which consent may be withheld in Landlord's absolute discretion. If Landlord does consent to an assignment or subletting, the assignee and/or sublessee shall first be obliged in writing to likewise assume all of the obligations of Tenant under this Lease; and Tenant shall, for the full term of this Lease, any renewal terms or any holdover term, continue to be jointly and severally liable with such assignee or sublessee for the payment of Rent, Additional Rent, and the performance of all obligations required by Tenant under this Lease.

If this Lease is assigned to any person or entity pursuant to the provisions hereof or the provisions of 11 U.S.C. § 10 1 et seq. (the "Bankruptcy Code"), any and all moneys or other

considerations payable or otherwise to be delivered in connection with any such assignment shall be paid or delivered to Landlord, shall be and remain the exclusive property of Landlord, and shall not constitute property of Tenant or of the estate of Tenant within the context of the Bankruptcy Code. Any and all moneys or other considerations constituting Landlords property under the preceding sentence not paid or delivered to Landlord shall be held in a separate account by the trustee or the debtor-in-possession in trust for the benefit of Landlord and be promptly paid or delivered to Landlord.

Any person or entity to which this Lease is assigned pursuant to the provisions of the Bankruptcy Code, 11 U.S.C. §101 et seq., shall be deemed without further act or deed to have assumed all of the obligations arising under this Lease on and after the date of such assignment. Any such assignee shall, upon demand, execute and deliver to Landlord an instrument confirming such assumption.

## ARTICLE 8. MAINTENANCE OF PARKING AND SIDEWALK AREAS

During the term of this Lease, Tenant shall, maintain and repair the buildings, building systems, driveways, drive aisles and parking lot areas exclusively serving the Leased Premises, with the right to be reimbursed by Landlord or other Tenants for their proportionate share of such expenses, if any.

Landlord shall have the right to enact rules for Tenant, its guests, invitees, agents, employees, officers and directors concerning the conduct and operation of the parking areas, driveways or drive aisles serving the Leased Premises

It is also understood and agreed that except for the grossly negligent or intentional acts or omissions of Landlord, Landlord shall have no obligation or liability whatsoever in connection with Tenant's use, maintenance or management of the Leased Premises.

## ARTICLE 9. REAL ESTATE TAXES AND ASSESSMENTS

Tenant agrees to promptly pay or to reimburse Landlord for its Proportionate Share of all real property taxes, school district taxes, assessments (general or special), impositions, or all other claims or charges, including use and/or privilege fees or assessments (herein collectively called the "Taxes") which may constitute or may be reduced to a lien upon the equipment, personal property, furniture, fixtures or trade fixtures within the Leased Premises during the term of this Lease, including, but not limited to, property taxes on the building, water charges, sewer charges, and any other taxes, general or special assessments or other charges allocated to the Leased Premises.

Landlord will notify Tenant in writing of any Taxes which Tenant is required to pay in accordance with the provisions of this Article, and Tenant shall pay the same directly to the Clark County Sheriff, County Clerk, or other designated tax collector or other taxing entity before they become delinquent. Tenant shall provide Landlord with evidence of such payments. In the

alternative, Landlord may arrange to have the bills sent directly to Tenant for payment and Tenant shall provide Landlord with evidence of the timely payment of any such obligation.

If Tenant fails to pay any Taxes which it is required to pay within the time period provided above, Landlord may, at its option, pay said Taxes, together with any and all penalties, and said amount, together with interest thereon at the rate of one percent (1%) per month, shall become immediately due and payable as additional rent.

Tenant shall have the right in its own name, or in Landlord's name where appropriate, but at Tenant's sole cost and expense, to contest the amount or legality of any Taxes which it is obligated to pay hereunder only for the Leased Premises and only if the Leased Premises are separately assessed, and to make application for the reduction thereof, or any assessment upon which the same may be based. In such event, Landlord agrees, at the request of Tenant, to execute or join in the execution of any instruments or documents necessary in connection with such contest or application. If Tenant shall contest any such Taxes, the time within which Tenant shall be required to pay the same shall be extended until such contest or application shall have been finally determined, except that Tenant shall be responsible for any penalty and interest imposed by the taxing authority resulting from late payment of Taxes due to said contest.

## ARTICLE 10. COVENANT OF TITLE AND QUIET ENJOYMENT

Tenant, upon paying the Rents, Additional Rents and keeping and performing the covenants of this Lease to be performed by Tenant, shall be entitled to exclusive peaceful use and quiet enjoyment of the Leased Premises, and non-exclusive use of quiet enjoyment of the Common Areas subject to all Permitted Encumbrances and Landlord's rules and regulations, during the initial term of this Lease or any renewal thereof.

## ARTICLE 11. NON-DISTURBANCE AND ESTOPPEL CERTIFICATES

This Lease shall automatically be subject and subordinate to the lien of any mortgage which Landlord may at any time place upon the Leased Premises and to all terms, conditions and provisions thereof, to all advances made, and to any renewals, extensions, modifications or replacements thereof. Provided, however, that if this Lease is in full force and effect and there are no defaults thereunder on the part of Tenant, Tenant's right of possession to the Leased Premises and Tenant's rights arising out of this Lease shall not be adversely affected or disturbed by Landlord's mortgagee in the exercise of any of its rights under any mortgage or the note secured thereby. In the event that Landlord's mortgagee, or any other person, acquires title to the Real Property pursuant to the exercise of any rights or remedies under a mortgage, then so long as Tenant is not in default under the terms of this Lease, this Lease shall not be terminated or affected by said foreclosure or sale, or any such proceedings, and the mortgagee shall agree that any sale of the Real Property pursuant to the exercise of any rights or remedies under any mortgage, or otherwise, shall be made without affecting this Lease and the rights of Tenant hereunder. Tenant agrees to attorn to the mortgagee or such other person as its new Landlord, and this Lease shall continue in full force and effect as a direct Lease between Tenant and such mortgagee or such other person, upon all the terms, covenants and agreements set forth in this

Lease. The parties hereto agree to execute or obtain execution of such reasonable documents as may be necessary to insure compliance with the subordination and non-disturbance provisions of this Article, including, but not limited to, one or more subordination, non-disturbance and attornment agreements executed by Tenant and any such mortgagee setting forth the provisions of this Article 11.

Upon request in writing from Landlord, Tenant agrees to promptly but within ten (10) days, execute, acknowledge and deliver to Landlord, or to the holder of any mortgage lien on the Leased Premises, a statement in writing satisfactory to Landlord or the holder of the mortgage, certifying the facts stated therein which if true may include, but shall not be limited to, the following information: (i) this Lease constitutes the entire agreement between Landlord and Tenant, with respect to the Leased Premises, is unmodified (or if there has been a modification, that the Lease, as modified) and is in full force and effect; (ii) the dates to which the Rent and other charges hereunder have been paid, and the amount of any security deposit held by Landlord; (iii) the Commencement Date of the Lease; (iv) Tenant is occupying the Leased Premises; and (v) Tenant knows of no default under the Lease by Landlord and there is no offset or counterclaim which Tenant has against Landlord, provided that such facts are true and ascertainable. In the event Tenant fails to provide such statement within ten (10) days after written request therefor, Tenant does hereby make, constitute and irrevocably appoint Landlord as Tenant's attorney-in-fact and hereby authorizes Landlord in Tenant's name, place and stead to execute such statement.

## ARTICLE 12. COMPLIANCE WITH LAWS ORDINANCES

Tenant shall, at all times during the initial term of this Lease or any renewal or holdover term, comply with all federal, state, county and city statutes, laws and ordinances and all, rules, regulations and orders of any duly constituted authority, present or future, affecting or respecting the improvements, use or occupancy of the Leased Premises or Real Property by Tenant, or the business at any time thereon transacted by Tenant or any assignee or sublessee of Tenant.

## ARTICLE 13. MECHANIC'S LIEN

If, because of any act or omission of Tenant or anyone claiming by, through or under Tenant, any mechanic's lien or order or claim for the payment of money is filed against the Leased Premises or Real Property, or any part of it or Landlord's interest therein or Landlord (whether or not such lien or order is valid or enforceable as such), Tenant shall, at Tenant's sole expense, cause the same to be canceled and discharged of record within sixty (60) days after the date of filing thereof by payment, bonding, or otherwise, as provided by law, and shall also defend with legal counsel reasonably acceptable to Landlord, indemnify and save Landlord harmless from and against any and all costs, expenses, claims, losses, liability or damages, including reasonable attorneys' fees, resulting from such lien or order or Tenant's failure to release the same.

Nothing in this Lease shall be deemed or construed to constitute Landlord's consent to or request for any improvements, alterations or repairs to be made to the Leased Premises or Real

Property, nor as giving Tenant the right or authority to contract for, authorize or permit the performance of any labor or services or the furnishing of any material that would permit the attaching of a valid mechanic's lien against the Leased Premises or Real Property, or Landlord's or Tenant's interest therein.

### ARTICLE 14. TRADE FIXTURES, MACHINERY AND EQUIPMENT

Landlord agrees that all trade fixtures, machinery, equipment, furniture or other personal property of whatever kind and nature kept or installed on the Leased Premises by Tenant shall not become the property of Landlord or a part of the Leased Premises and may be removed by Tenant, in its discretion, at any time and from time to time during the entire term of the Lease and any renewals, unless the removal thereof would cause substantial and irreparable damage to the Leased Premises, or unless Tenant is in default under the terms of this Lease as of the date of any intended removal.

### ARTICLE 15. REMOVAL OF PERSONAL PROPERTY AND TRADE FIXTURES

Tenant shall have the right, except as provided in Article 14, to remove such trade fixtures, equipment and personal property on or before the expiration of this Lease or any extensions or renewals thereof. Provided it is not then in default hereunder, Tenant is hereby expressly given the right at any time during the term of this Lease or any extension thereof and for a period of ten (10) days after the termination of this Lease, or any extension thereof, by lapse of time or otherwise, to enter upon and remove from said Leased Premises any trade fixtures, equipment, furniture and appliances of Tenant.

Any trade fixtures attached upon the Leased Premises or any equipment, material, or other personal property used by Tenant on the Leased Premises shall, on the expiration or termination of this Lease, if requested by Landlord, be promptly removed at Tenant's expense. Tenant shall repair all damage to the Leased Premises caused by such removal and the Leased Premises shall be restored by Tenant at its expense to its original condition, ordinary wear and tear excepted.

All of Tenant's trade fixtures, equipment, material and other personal property not removed from the Leased Premises within thirty (30) days after expiration or termination of this Lease, and not required by Landlord to be removed as provided in this Article, shall be conclusively presumed to have been abandoned by Tenant, and title thereto shall pass to Landlord under this Lease as by a bill of sale.

Tenant's obligation to observe or perform this covenant shall survive the expiration or other termination of this Lease.

### ARTICLE 16. MAINTENANCE AND REPAIRS

Tenant shall at all times keep the Leased Premises, the improvements thereof, and all appurtenances, in a well-maintained, clean, safe, aesthetically pleasing manner and sanitary

7

condition, free of any nuisance, hazard or unreasonable accumulation of trash, garbage, debris, ice and snow. Tenant shall, during the entire Lease term, and any extensions, renewals or holdovers thereof, at its cost, keep, replace and maintain in good, safe, clean and sanitary condition and repair, ordinary wear and tear excepted, the interior and exterior of the Leased Premises and all improvements at any time erected thereon, including, but not limited to, the roof, windows and all other structural components of the building, all parking lot and sidewalk areas and all landscaping and site improvements adorning exclusively, if any, the Leased Premises, and all heating, cooling, plumbing, electric and lighting fixtures located in, on or serving the Leased Premises. In addition, Tenant shall, during the entire term of this Lease and any extensions, renewals and holdovers, use all reasonable precaution to prevent waste, damage or injury to said improvements and the Leased Premises. Tenant shall also at its own expense maintain, replace, keep open, free from obstruction and in good repair, all electric, water, sewer, and other utility lines and connections, conduits, pipes, catch basins, manholes, poles, lighting fixtures, plumbing fixtures and other related facilities situated in, under or on the Leased Premises or constituting any part of any improvement constructed thereon, except such facilities which may traverse the Leased Premises for the benefit of the Common Areas, unless the same are damaged by Tenant, its agents, employees, contractors (including independent contractors) or licensees, their employees or agents.

Landlord shall be responsible for the costs to maintain, repair, replace, improve and care for the Common Areas and the costs to maintain, repair, replace, improve or care for any part of the Real Property which is not included within the Leased Premises of Tenant or any other Tenant within the Real Property or any of the improvements constructed thereon.

## ARTICLE 17. INSURANCE

Beginning with the Commencement Date, Tenant shall obtain and maintain, paying the cost thereof, (i) general commercial liability insurance with coverage of not less than One Million Dollars ($1,000,000) per person, Two Million Dollars ($2,000,000) aggregate for bodily injury and property damage including products and completed operations, Med Pay and Fire Legal, with Landlord named as an additional insured, (ii) Special Form property insurance plus earthquake, on the building, plus improvements and betterments with extended coverage endorsement for the benefit of Landlord, Landlord's mortgagee, and Tenant, as their respective interests may appear, on all improvements located on the Leased Premises, in an amount equal to at least one hundred percent (100%) of the full replacement value thereof, excluding foundation and excavating costs; and (iii) worker's compensation insurance in at least the statutorily required amounts. A Certificate of Liability Insurance including workers compensation and Evidence of Property Insurance shall be delivered to Landlord at the commence of the lease with notation of Landlord as additional insured and waiver of subrogation. If Landlord, in its reasonable business judgment, decides to require Tenant to carry and maintain a policy or policies of insurance for increased and/or additional coverage, such policy shall be furnished and maintained by Tenant. Insurance required of Tenant hereunder may be carried under one or more blanket policies, provided all terms thereof are satisfactory to Landlord and mortgagee. Failure to provide the above required insurance does not absolve or release Tenant of any financial responsibility to Landlord, to be made whole in the event of any loss.

All property within the Leased Premises belonging to Tenant, its vendors, agents, employees or invitees, or to any occupant of the Leased Premises shall be there at the risk of Tenant or such other person only, and Landlord shall not be liable for damage thereto or theft, misappropriation, or loss thereof, unless caused by Landlord's gross negligence or intentional acts.

Each policy of insurance required of Tenant hereunder shall provide that it cannot expire or be canceled without thirty (30) days' prior written notice to Landlord and Landlord's mortgagee, and copies of all policies shall be delivered to Landlord on or prior to the effective date thereof. All such policies shall be in companies reasonably acceptable to Landlord and licensed to conduct business in the State of Kentucky.

Insurance required by this Article may be obtained by Landlord, in which event Tenant shall reimburse Landlord its Proportionate Share, or by Tenant, in which event Landlord shall reimburse Tenant its Proportionate Share, so long as such insurance is maintained at all times for the mutual benefit of both parties. However, the parties agree that initially and until otherwise agreed, Tenant shall be responsible to obtain all required liability and property insurance.

## ARTICLE 20. MUTUAL WAIVER OF SUBROGATION

Landlord and Tenant hereby mutual release each other from any claim for damage or destruction to the Leased Premises and the contents thereof belonging to either party, their respective its employees, agents or invitees, for the business interruption of Landlord or Tenant, caused by fire or any other peril insured under fire and extended coverage insurance carried by Landlord or Tenant whether due to the negligence of either Landlord or Tenant or otherwise.

## ARTICLE 21. DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS

If the building and/or other improvements on the Leased Premises shall be damaged or rendered untenable by fire or other casualty, Tenant shall repair or replace said improvements. Provided Tenant is not in default under the terms of this Lease, Tenant shall have the right to use all insurance proceeds from policies maintained and paid by Tenant and/or Landlord payable by reason of such damage or destruction, all such proceeds to be used solely to repair or reconstruct the improvements upon the Leased Premises. It is further agreed that the rent herein required to be paid shall abate during said period of untenantability, or if the improvements shall be damaged but not rendered untenable thereby, the rent shall abate in an amount proportionate to the decrease in the utility of the Leased Premises. In the event that any damage or destruction occurring during the term of this Lease, or any renewal term or extension, is greater than fifty percent (50%) or more of the insurable value of the building, either Landlord or Tenant may, at its option, to be evidenced by notice in writing given to the other within thirty (30) days after the occurrence of such damage or destruction, in lieu of repairing or replacing such building, elect to terminate this Lease as of the date of said damage or destruction, and all insurance proceeds shall be paid to Landlord or its mortgagee as their interests may appear.

## ARTICLE 22. CONDEMNATION

If any part of the Leased Premises shall be taken or condemned by an agency with the power of eminent domain and the remaining part thereof can reasonably be used by Tenant hereunder, this Lease shall, as to the part so taken only, terminate as of the date title is vested in the condemning party, but this Lease shall otherwise remain in full force and effect and any rent payable hereunder shall not be adjusted.

If all of the Leased Premises or such part thereof be taken or condemned by an agency with the power of eminent domain so that there does not remain a portion reasonably acceptable for Tenant's use and occupancy hereunder, this Lease may be terminated by Tenant, in which event all unearned, prepaid rent shall be returned to Tenant.

Tenant shall receive no portion of any award payable to Landlord under a condemnation action, whether by negotiation or condemnation trial for land or improvements taken or damages to remaining land not sought to be acquired, except as provided in the following paragraph.

Nothing herein contained shall be deemed or construed to prevent Tenant from interposing and prosecuting in any condemnation proceedings (i) a claim for the value of any trade fixtures installed in the Leased Premises by Tenant, and (ii) in the case of a partial condemnation of the Leased Premises, the cost, loss or damage sustained by Tenant as the result of any alterations, modifications or repairs which may be reasonably required by Tenant in order to place the remaining portion of the Leased Premises not so condemned in a suitable condition for Tenant's further occupancy.

## ARTICLE 23. NO WAIVER, LACHES OR ACCORD AND SATISFACTION

The waiver of any covenant or condition or the acquiesced breach thereof shall not be taken to constitute a waiver of any subsequent breach of such covenant or condition nor to justify or authorize the non-observance of the same or of any other covenant or condition hereof. No payment by Tenant or receipt by Landlord of an amount less than the total Rent due hereunder shall be deemed to be other than on account of the earliest stipulated Rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction or waiver, and Landlord may accept such check or payment without waiver of the default or prejudice to Landlord's right to recover the balance of such Rent or pursue any remedy provided in this Lease or available at law or in equity. Each party waives and disclaims any partnership or joint venture hereunder.

## ARTICLE 24. SIGNS

Tenant shall not place or erect signs, awnings or canopies on the roof or walls of the Leased Premises, without the written approval of Landlord. When so approved, Tenant agrees (i) to maintain all signs in good condition and repair, and (ii) to save and hold Landlord free from all cost, expense, loss or damage which may result from the erection, maintenance, existence, replacement or removal of any signs. Upon vacating the Leased Premises, Tenant agrees to

remove all such signs and to repair all damage caused or resulting from such removal. So long as any such proposed signs (i) will not adversely affect the architectural quality or character of the improvements on the Leased Premises and (ii) will comply with all applicable building and zoning ordinances, Landlord may erect such signs as Landlord deems necessary or appropriate. Tenant shall submit to Landlord for approval drawings showing all proposed signs to be erected in connection with the Leased Premises.

## ARTICLE 25. NOTICES

Whenever notice is required hereunder, it shall be given in writing and delivered or sent by registered or certified United States Mail, postage prepaid, with return receipt requested, or by private nationally recognized overnight carrier, to the following addresses or to such other addresses as either may hereafter designate in writing to the other:

Landlord:   4274 Colby, LLC
            4274 Colby Road
            Winchester, Kentucky 40391

Tenant:     AVF CBD, LLC
            756 Hickory Industrial Boulevard
            Old Hickory, Tennessee 37138
            Attn:  Greg Martini

If such notice is mailed, it shall be deemed to have been served either when received or forty-eight (48) hours after deposited in the United States mail, whichever is earlier.

## ARTICLE 26. DEFAULTS

(i) Should Tenant fail to pay all or any part of the Rent, Additional Rent or other payments required to be paid by Tenant when due; or (ii) should Tenant fail to perform or observe any obligation, covenant or condition on Tenant's part to be performed or observed under the terms of this Lease and fail to cure such default within thirty (30) days after written notice from Landlord specifying the failure under this Lease; or (iii) should this leasehold or any interest therein be taken under levy, execution, attachment, foreclosure or other process of law; or (iv) should the Leased Premises be vacated, abandoned or business operations of Tenant cease (failure to operate for three (3) consecutive months without Landlord's prior written approval); or (v) should Tenant make an assignment for benefit of creditors, file a voluntary petition in bankruptcy or for an Agreement or Reorganization, or suffer an involuntary petition to be filed against Tenant, or suffer a receiver or trustee to be appointed for Tenant; or, (vi) should Tenant permit its fixtures, equipment or personal property in the Leased Premises to be attached or taken under execution or other legal process, and any such action or proceedings are not dismissed within thirty (30) days, in all or any of such events, a breach of this Lease shall have occurred and the Landlord may, at its option, upon ten (10) days' written notice ("10-Day Notice of Default") and Tenant's failure to cure all existing defaults during that ten (10) day period, terminate Tenant's use and possession of the Leased Premises and/or terminate this Lease. Thereafter,

Landlord, in either event and in addition to any other remedies available, shall have the immediate right to enter and repossess all of the Leased Premises by force, summary or dispossess proceedings, or otherwise, and remove therefrom all occupants and take and store any property in a public or private warehouse or elsewhere at the cost of and for the account of Tenant, without becoming liable to prosecution or damages therefor, may seize and hold Tenant's fixtures as its own property, and thereupon all rights of Tenant and obligations of Landlord to Tenant hereunder shall cease.

Notwithstanding any such termination and reentry resulting from Tenant's default of any provision of this Lease, Tenant shall remain liable for any rent or damages which may be done or sustained prior thereto, and in addition, Tenant shall also be liable for all further rents for the remaining term of this Lease or any remaining Renewal term which Tenant has exercised or enjoyed, and all damages, costs and expenses incurred by Landlord, less such net proceeds (proceeds after deduction of all costs of maintenance, repair and re-letting of the Leased Premises) as are recovered by Landlord as a result of the re-letting of the Leased Premises. Landlord agrees to use reasonable efforts to re-let the Leased Premises or otherwise mitigate its damages.

In addition to all other remedies, Landlord is entitled to obtain a restraining order and/or injunction against all violations, actual, attempted or threatened of any covenant, condition or provision of this Lease. Tenant shall be liable for any and all attorney fees, accounting fees, survey fees, broker fees, expert witness fees, and any other expenses incurred by Landlord in making demand or otherwise exercising its rights upon Tenant's default.

Landlord may, but shall not be obligated to cure, at any time, without notice, any default by Tenant under this Lease, and whenever Landlord so elects, all costs and expenses incurred by Landlord, including, without limitation, reasonable attorney's fees, together with interest at the rate of one percent (1%) per month per year on the amount of costs and expenses so incurred, shall be paid by Tenant to Landlord on demand.

### ARTICLE 27. HOLDING OVER AND CONDITION OF PREMISES

In the event Tenant holds over beyond the expiration of the term hereof or any renewal term, such holding over shall be deemed a month-to-month tenancy at the monthly rental (guaranteed and percentage) due and owing during the last year of the then expired term of this Lease, payable on the first day of each and every month thereafter. If Tenant holds over pursuant to this Article, this Lease may be terminated by either party on thirty (30) days' prior written notice to the other.

### ARTICLE 28. INDEMNIFICATION

Tenant agrees to indemnify and save harmless Landlord, against and from any and all claims, costs, injuries, liabilities, losses or damages, including, but not limited to, all expenses, costs and reasonable attorney fees, incurred by any of them which may occur, arise or be claimed to occur or arise directly or indirectly from or out of: (i) any breach or default on the part of

Tenant of any payment, duty, obligation, promise or covenant made by it or to be performed by it pursuant to the terms of this Lease; (ii) any act or omission of Tenant, or any of its agents, contractors (including independent contractors selected by Tenant), servants, employees, licensees or sub-licensees, guests, invitees or any other persons occurring in, on or about the Real Property or Leased Premises, (iii) any cause whatsoever, on, about or relating to the Real Property or Leased Premises during the term of this Lease, due in whole or in part to the acts or omissions on the part of Tenant, its employees, agents, guests or invitees, or anyone else not a party to this Lease, whose presence in, on or about the Real Property was caused by, or allowed to exist continuely by Tenant, its employees, agents, guests or invitees, and whether such acts or omissions are active or passive in character, including, without limitation, any use, misuse, possession, occupancy or abandonment of the Leased Premises by anyone whose presence in, on or about the Real Proeprty was caused by, or allowed to exist continuely by Tenant, its employees, agents, guests or invitees, during the term of this Lease and/or (iv) any costs or expenses in prosecuting any of the foregoing, whether threatened or litigated.

In the event any action or proceeding is brought against Landlord by reason of any such claim, loss or liability, Tenant, upon notice from Landlord, covenants to resist or defend, at Tenant's sole cost, such action or proceeding by counsel reasonably satisfactory to Landlord.

Notwithstanding any other provision contained in this Lease, Tenant shall fully and promptly pay, perform, discharge, defend, indemnify and hold harmless Landlord from any and all claims, orders, demands, causes of action, proceedings, judgments, or suits and all liabilities, losses, costs or expenses (including, without limitation, technical consultant fees, court costs, expenses paid to third parties and reasonable legal fees) and damages arising out of, or as a result of (i) any "release," as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), of any "hazardous substance," as defined in CERCLA, or petroleum (including crude oil or any fraction thereof) discharged, deposited, dumped, spilled, leaked or placed into, on or around the Leased Premises at any time during the term of this Lease or any renewal or holdover thereof; (ii) any contamination by Tenant, its employees, licensees or contractors, their agents or employees of the Leased Premises' soil or groundwater or damage to the environment and natural resources of or around the Leased Premises during the term of this Lease or any renewal or holdover thereof, whether arising under CERCLA or other statutes, regulations, or common law; and/or (iii) or any toxic, explosive or otherwise dangerous materials, including, but not limited to, asbestos, which are present at, buried beneath, placed on or concealed within or around the Leased Premises during the term of this Lease or any renewal or holdover thereof.

The indemnification provisions of this Article 28 shall survive the expiration or earlier termination of this Lease.

Landlord agrees to indemnify and save harmless Tenant, its officers, directors, shareholders and employees, against and from any and all claims, costs, liabilities, injuries, losses or damages, including, but not limited to, all expenses, costs and reasonable attorneys' fees, incurred by any of them arising directly or indirectly out of (i) any breach or default on the part of Landlord of any duty, obligation, promise or covenant made by it or to be performed by it

pursuant to the terms of this Lease; (ii) any act or omission of Landlord, or any of its agents, contractors (including independent contractors selected by Landlord), servants, employees or licensees or sub-licensees, or any other person occurring in, on or about the Rea; Property; or (iii) any costs or expenses in prosecuting any of the foregoing, whether threatened or litigated.

In the event any action or proceeding is brought against Tenant, its officers, directors, shareholders or employees, by reason of any such claim, loss or liability, Landlord, upon notice from Tenant, covenants to resist or defend, at Landlord's cost, such action or proceeding by counsel reasonably satisfactory to Tenant.

### ARTICLE 29. LANDLORD'S REPRESENTATIONS AND WARRANTIES

Landlord warrants and represents to Tenant that Landlord has fee simple title to the Real Property to the best of Landlord's knowledge.

### ARTICLE 30. ENTIRE AGREEMENT

This Lease and the exhibits attached hereto and forming a part hereof set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Leased Premises. No subsequent alteration, amendment, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by both of them.

### ARTICLE 31. MEMORANDUM OF LEASE

The parties agree that, upon request of either party, a Memorandum of this Lease shall be executed and recorded in the Real Estate Records of Clark County, Kentucky. The cost to prepare and record such Memorandum of Lease shall be paid by the party requesting recordation thereof.

### ARTICLE 32. PARTIAL INVALIDITY

If any provision of the Lease or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, then the Lease and the circumstances, other than those as to which it is invalid or unenforceable, shall be enforced to the fullest extent permitted by law.

### ARTICLE 33. APPLICABLE LAW

This Lease shall be construed and enforced in accordance with the laws of the State of Kentucky in all respects.

### ARTICLE 34. BINDING ON TRANSFEREES, GRANTEES, ETC.

This Lease shall be binding upon the transferees, grantees and successors in interest of Landlord, or any permitted or approved assignees or subtenants of Tenant herein. Nothing herein,

however, shall be construed to allow Tenant to assign or sublet contrary to the provisions and conditions set forth in this Lease. Landlord is hereby granted the right to transfer or assign its rights under this Lease without the prior written consent of Tenant, provided that any transferee or assignee of
Landlord assumes and agrees to perform all of Landlord's obligations hereunder. Landlord is also hereby granted the right to encumber or mortgage its interests under this Lease without the consent of Tenant.

## ARTICLE 35. PROVISIONS OF LAW DEEMED INCLUDED

Each and every provision and clause required by law or regulation to be included in this Lease shall be deemed to be included herein, and this Lease shall be read, construed and enforced as though the same were included herein. If, through mistake, inadvertence or otherwise, any such provision or clause is not included herein or is incorrectly included herein, then upon application of either party hereto, this Lease shall forthwith be amended to include the same or to correct the inclusions of the same.

## ARTICLE 36. ELECTION OF REMEDIES NOT EXCLUSIVE

It is mutually agreed by Landlord and Tenant that the various rights, powers, options, elections, privileges and remedies of Landlord and Tenant shall be cumulative and no one of them shall be exclusive or exclusive of rights and privileges granted to Landlord or Tenant by statute.

## ARTICLE 37. ATTORNEYS' FEES

In the event it is necessary for either party to employ an attorney to enforce the terms of this Lease, or file an action to enforce any terms, conditions or rights under this Lease, or to defend any action or arbitration, then the prevailing party in any such action shall be entitled to recover from the other, all reasonable attorneys' fees, costs and expenses as may be fixed by the court, and such attorneys' fees, costs and expenses may be made a part of any award or judgment entered.

**SIGNATURES ON THE FOLLOWING PAGE**

IN TESTIMONY WHEREOF, Landlord and Tenant have caused this Lease to be signed as of the day and year first stated above.

                                **LANDLORD: 4274 COLBY, LLC**

By: _/s/ William R. Hilliard, Jr._
     William R. Hilliard, Jr. Manager

By: _Notice Only_
     Andrew Barnett, Manager

                                **TENANT: AVF CBD, LLC**

By: _____
As its: _____

S:\BHilliard\4274 Colby\4274 - AVF CBD, LLC Month to Month Lease 8-17-2021 Clean.doc

SCHEDULE A TO LEASES

GenCanna Acquisition Corp. or AVF CBD, LLC

4274 Colby, LLC
Leased property split between GenCanna Acquisition Corporation and AVF CBD, LLC

**Actual Use Schedule**

FMV Rent $ 312,515   Minimum Rent $ 190,000

| | | Annual Rental Value | Possession | Percentage Atalo | Percentage GenCanna | Annual Rent Atalo | Annual Rent GenCanna | Minimum Rental Value | Percentage Atalo | Percentage GenCanna | Annual Rent Atalo | Annual Rent GenCanna |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Main Office/Lab/Warehouse (2) | $ 61,356.00 | G1 | 0% | 100% | $ - | $ 61,356.00 | $ 37,302.66 | 0% | 100% | $ - | $ 37,302.66 |
| 2 | Research Greenhouses+ headroom | $ 40,150.00 | | 15% | 85% | $ 6,022.50 | $ 34,127.50 | $ 24,410.03 | 15% | 85% | $ 3,661.50 | $ 20,748.52 |
| 3 | Picnic Shelter | | | 0% | 100% | $ - | $ - | $ - | 0% | 100% | $ - | $ - |
| 4 | Greenhouse Complex | $ 13,440.00 | | 0% | 100% | $ - | $ 13,440.00 | $ 8,171.13 | 0% | 100% | $ - | $ 8,171.13 |
| 5 | Metal Storage Building | $ 1,800.00 | | 0% | 100% | $ - | $ 1,800.00 | $ 1,094.35 | 0% | 100% | $ - | $ 1,094.35 |
| 6 | Small Barns | $ 3,888.00 | | 0% | 100% | $ - | $ 3,888.00 | $ 2,363.79 | 0% | 100% | $ - | $ 2,363.79 |
| 7 | Concrete Block Storage Building | $ 6,928.00 | | 100% | 0% | $ 6,928.00 | $ - | $ 4,212.02 | 100% | 0% | $ 4,212.02 | $ - |
| 8 | Metal Storage Building | $ 7,134.00 | | 100% | 0% | $ 7,134.00 | $ - | $ 4,337.26 | 100% | 0% | $ 4,337.26 | $ - |
| 9 | Concrete Block Building (1) | $ 37,600.00 | | 100% | 0% | $ 37,600.00 | $ - | $ 22,859.70 | 100% | 0% | $ 22,859.70 | $ - |
| 10 | Metal Storage Building | $ 9,600.00 | G3 | 0% | 100% | $ - | $ 9,600.00 | $ 5,836.52 | 0% | 100% | $ - | $ 5,836.52 |
| 11 | Metal Storage Building | $ 42,624.00 | G2 | 0% | 100% | $ - | $ 42,624.00 | $ 25,914.15 | 0% | 100% | $ - | $ 25,914.15 |
| 12 | Metal Storage Building | $ 8,454.00 | | 100% | | $ 8,454.00 | $ - | $ 5,139.79 | 100% | 0% | $ 5,139.79 | $ - |
| 13 | Maintenance Equipment Shed | $ 21,381.00 | G4 | 0% | 100% | $ - | $ 21,381.00 | $ 12,999.02 | 0% | 100% | $ - | $ 12,999.02 |
| 14 | Pesticide Storage Building | $ 2,400.00 | | 0% | 100% | $ - | $ 2,400.00 | $ 1,459.13 | 0% | 100% | $ - | $ 1,459.13 |
| 15 | Wood Barn | $ 2,400.00 | | 100% | 0% | $ 2,400.00 | $ - | $ 1,459.13 | 100% | 0% | $ 1,459.13 | $ - |
| | 71.5 Acres Crop Land | $ 25,025.00 | 350 | | | $ 5,687.50 | $ 19,337.00 | $ 15,214.47 | $ 212.79 | | $ 3,457.83 | $ 11,756.64 |
| | 38.5 Acres Ag Land | $ 5,775.00 | 150 | | | $ 1,312.50 | $ 4,462.50 | $ 3,511.03 | $ 91.20 | | $ 797.96 | $ 2,713.07 |
| | Base Rents | $ 289,955.00 | | | | $ 75,538.50 | $ 214,416.00 | $ 176,284.18 | | | $ 45,925.20 | $ 130,358.97 |
| | Additional Rent | | | | | | | | | | | |
| | Repair Fund | $ 50,000.00 | | 26% | 74% | $ 13,025.90 | $ 36,974.01 | TBD | 26.05% | 73.95% | $ - | $ - |
| | Property Taxes (2) | TBD | | 26% | 74% | $ - | $ - | 17001.07 | 26.05% | 73.95% | $ 4,429.08 | $ 12,571.99 |
| | Common Area Maintenance (3) | TBD | | 26% | 74% | $ - | $ - | TBD | 26.05% | 73.95% | $ - | $ - |
| | Total Additional Rent | $ 50,000.00 | | | | $ 13,025.90 | $ 36,974.01 | $ 17,001.07 | | | $ 4,429.08 | $ 12,571.99 |
| | **Total Rents** | | | | | $ 88,564.40 | $ 251,390.01 | | | | $ 50,354.29 | $ 142,930.96 |

| | | % | 26.05% | 73.95% |
|---|---|---|---|---|
| | Monthly | | $ 4,196.19 | $ 11,910.91 |
| | Daily | | $137.96 | $391.59 |

(1) Adjust blended rate based on office space, block construction etc.
(2) Adjust property taxes to equal proportionate to rental value allocation
(3) Adjust common area maintenance to equal proportionate to rental value allocation

| | Occupy | Lease Date | Days | Daily | |
|---|---|---|---|---|---|
| GenCanna | 5/15/2020 | 4/30/2021 | 350 | $391.59 | $137,057.08 |
| AVF CBD | 6/6/2020 | 4/30/2021 | 328 | $137.96 | $45,249.88 |

| | | | Annual | Days | Daily | |
|---|---|---|---|---|---|---|
| Inc G2 | GenCanna | 4/30/2021 | 5/18/2021 | $ 142,930.96 | 18 | $391.59 | $7,048.65 |
| Exclude G2 | GenCanna | 5/18/2021 | 7/1/2021 | $ 117,016.81 | 44 | $320.59 | $14,106.14 |
| | AVF CBD | 4/30/2021 | 7/1/2021 | $ 50,354.29 | 62 | $ 137.96 | $ 8,553.33 |

Due as of 7/1/2021   $ 53,803.21 | $ 158,211.87

8-18-2021
WAT