**Exhibit G**

(Exclusive Marketing Agreement for the Sale of Real Property)



## EXCLUSIVE MARKETING AGREEMENT
## FOR THE SALE OF REAL PROPERTY

4274 Colby, LLC
Name(s) of Owner

4274 Colby Road, Winchester, KY 40391
Owner's Current Mailing Address

THE PROPERTY:

| 4274 Colby Road | Winchester | Clark | KY | 40391 |
|---|---|---|---|---|
| Street Address | City | County | State | Zip |

| Agricultural | Appx. 60,000 SF on appx. 148 AC | Partially Improved |
|---|---|---|
| Current Zoning | Square Feet or Acres ± | Improved or Unimproved |

$3,999,000
Listing Price

This **Exclusive Marketing Agreement For The Sale Of Real Property** is made as of the date of later execution hereof (the "Effective Date") by the undersigned Owner (whether one or more) and **Block + Lot Real Estate, LLC**, a Kentucky limited liability company, with offices at 133 W. Short Street, Lexington, KY 40507 ("Block + Lot").

### RECITALS:

First, that Block + Lot is engaged in the business of serving as a broker for the sale of real property in the Commonwealth of Kentucky; and

Second, that Owner desires to engage Block + Lot to market the real property identified above (the "Property"), and Block + Lot is willing to market the Property on behalf of Owner, all in accordance with the terms and subject to the conditions contained in this Agreement.

### AGREEMENTS:

In consideration of the foregoing recitals, the covenants and agreements set forth in this Agreement, and the mutual benefits to be derived therefrom, the receipt and adequacy of which are hereby acknowledged, Owner and Block + Lot, intending to be legally bound, hereby agree as follows:

1. **Grant of Exclusive Right to Sell** Owner hereby grants to Block + Lot, during the Term, the sole and exclusive right and authority to market and endeavor to sell the Property at the Listing Price and on the other terms contained in this Agreement, or at such other price and on such other terms as are acceptable to Owner. Block + Lot will lead, arrange and be present at all showings of the Property. Block + Lot will lead all negotiations and discussions with third-parties, including Excluded Parties, related to the potential sale of the Property.

2. **Listing Price** The Listing Price for the Property shall be as set forth above, payable in U.S. Dollars, cash due at the consummation of the sale of the Property (the "Closing").

3. **The Term** The Term of this Agreement shall be for a period of 12 calendar months following the Effective Date, expiring at 5:00 P.M. (Eastern) on September 30, 2022; provided, however, that after six (6) calendar months

21724930.v6

Page 1 of 5

following the Effective Date, Owner shall have the right to end the Term of this Agreement upon sending 30 days' notice to Block + Lot. If the Term ends before September 30, 2022 then Owner shall reimburse Block + Lot for its actual marketing costs and expenses.

4.    **Commission**   Block + Lot shall be entitled to a commission in the amount of six percent (6%) of the total sale price of the Property, subject to the reductions set forth in this section 4 of the Agreement. All commissions shall be computed on the gross sale price of the Property in the event any part or portion of the Property is co-brokered. In the event Block + Lot is the only brokerage involved in the transaction, the commission shall be five percent (5%) of the total sale price of the Property. In the event Peter Barr is the only broker involved in the transaction, the commission shall be four percent (4%) of the total sale price of the Property.

The commission shall be due and payable at the Closing, whether the purchaser is secured by Owner, Block + Lot or any other person. Block + Lot shall be deemed to have earned the Commission upon the closing of the actual sale of the Property to a ready, willing and able purchaser in accordance with the terms of this Agreement, or in accordance with such other terms and conditions as are acceptable to Owner. Additionally, Block + Lot shall be deemed to have earned the Commission if, within 3 calendar months after expiration of this Agreement, the Property is actually purchased by any person or entity with whom Block + Lot was in active negotiations as of the expiration of this Agreement.

Any commissions not paid when due are subject to late charges and interest of one and one half (1½%) percent per month. Any funds expensed in collection of commissions including, but not limited to attorney's fees and collection agencies are to be reimbursed to Broker by Owner.

The parties acknowledge and agree that Owner has already engaged in efforts to market the Property to the following parties (collectively, the "Excluded Prospects"): (1) the University of Kentucky College of Agriculture and related entities; (2) Craig Investments, LLC and its insiders and affiliates; (3) AppHarvest and its affiliates; and (4) the Owner's members, 101 Enterprises, LLC and GenCanna Acquisition Corporation, and their respective members, insiders and affiliates. In the event of a sale of all or any part or portion of the Property to an Excluded Prospect during the listing period or three (3) calendar months after expiration of this Agreement, Block + Lot shall remain involved in the transaction and be entitled to a reduced commission of two percent (2.0%) of the gross sale price of the Property, or any part or portion of the Property.

5.    **Marketing by Block + Lot**   Block + Lot covenants with Owner as follows:

(a)    that Block + Lot will, in an earnest and continued effort to sell the Property on the terms contained herein, list, advertise and promote the Property for sale in a manner that, in the judgment of Block + Lot and its agents, will aid in securing prospects for the property;

(b)    that Block + Lot will offer the Property for sale without regard to race, color, sex, creed, age, religion, national origin, marital status, or disability;

(c)    that Block + Lot will solicit written offers from prospective purchasers, and then submit such written offers to Owner for Owner's approval and acceptance;

(d)    that Block + Lot will assist Owner in negotiating an acceptable purchase contract with a purchaser, with final determination of sale price and terms of sale to be made solely by Owner;

(e)    that Block + Lot will conduct all appropriate marketing for the Property and keep Owner apprised of all marketing efforts. In the event Owner desires for Block + Lot to advertise the Property in industry specific magazines or trade journals, Owner will so advise Block + Lot and will reimburse the costs thereof. Owner's obligations under this Section 5(e) of the Agreement will be satisfied in equal parts by the Owner's two members, 101 Enterprises, LLC and GenCanna Acquisition Corp. Each of 101 Enterprises, LLC and GenCanna Acquisition Corp. will be responsible for no more than half of the expenditures, fees and/or interest incurred under this Section 5(e) of the Agreement. If Owner approves a significant marketing expense under this Section 5(e) of the Agreement, Block + Lot may direct Owner to pay such expense directly. Alternatively, Block + Lot will promptly invoice Owner for any costs incurred under this section 5(e) of the Agreement, and Owner will pay within thirty days of receipt of the invoice; and

(f)    all marketing materials and other documents, videos, images, etc. developed by Block + Lot in connection with its efforts to market and sell the Property will be the property of the Owner, which the Owner will have the right to use. Nevertheless, Block + Lot will have the limited right to disclose this engagement, the outcome thereof, and to use any documents, videos, images, etc. developed by Block + Lot in connection with its efforts to market and sell the Property as examples in marketing Block + Lot's own services.

6.    **Owner's Representations, Warranties and Covenants**   Owner represents, warrants and covenants to Block + Lot as follows:

(a)    that Owner holds fee title to the Property, and has full authority to sign, deliver and perform under this Agreement, and that Owner shall at the Closing execute and deliver to the purchaser a special warranty deed for the Property;

(b)    that Owner shall refer to Block + Lot all inquiries of other brokers, agents and other persons interested in the Property, and shall cooperate fully with Block + Lot in every way possible to bring about a sale of the Property;

(c)    that all negotiations or dealings relating to the sale of the Property shall be with and through Block + Lot, and that Block + Lot may make the listing for the Property available to cooperating brokers;

(d)    that Block + Lot shall have the exclusive right to place "For Sale" sign(s) on the Property, to remove all other signs, and to otherwise advertise the Property for sale;

(e)    that Block + Lot and its agents shall have full access to the Property for purposes of displaying and showing the Property to prospective purchasers;

(f)    that Block + Lot shall have no responsibility with respect to the condition of the Property, its management or care;

(g)    that Owner has not contracted with any other party for the sale or lease of the Property, and no other party holds an interest in the Property except as set forth in paragraph 13 of this Agreement, and no real estate agent has any outstanding claim for commission against the Property; and

(h)    that all information related to the Property provided and to be provided by Owner to Block + Lot or its agents (including specifically the property information contained in the heading of this Agreement) is and shall be true and correct to the best of Owner's knowledge, and Owner understands that Block + Lot and its agents will rely on this information in promoting and marketing the Property, and Owner agrees to hold harmless, defend and indemnify Block + Lot and its agents for any liability they may incur for utilizing this information in the promotion of the Property.

7.    **Deposits**   Block + Lot is authorized to accept deposits on purchase contracts obtained pursuant to this Agreement and to deposit same in Block + Lot's escrow account, said deposits to be released by Block + Lot at the Closing in accordance with the terms of this Agreement or when otherwise authorized under Kentucky law.

8.    **Default by a Purchaser**   In the event of a default by a purchaser who is under contract to buy the Property, or any part or portion thereof, or in the event of a mutual termination of a contract by Owner and the purchaser, the purchaser's earnest money deposit shall be forfeited and shall then be divided as provided for in Section 7.

9.    **Dual Representation**   Pursuant to this Agreement, Block + Lot will be acting in the capacity of Owner's agent. However, Owner hereby specifically acknowledges that Block + Lot may also represent a prospective purchaser. Should any such prospective purchaser become interested in the Property, Owner hereby authorizes Block + Lot to serve as a dual agent for Owner and purchaser. As a dual agent, Block + Lot will have the duty to make a full, fair and timely disclosure of all material facts and information within Block + Lot's knowledge or readily available to Block + Lot that might in any way affect either Owner's or the purchaser's rights and interests or otherwise influence either party's action or decision in connection with the contemplated transaction. Notwithstanding the foregoing, to the extent that confidential information has been communicated to Block + Lot by either party, it is agreed that Block + Lot is not required to disclose, and will not disclose, such information to the other party.

10.     **Notices**   Any notice, demand, request or other instrument that may be required to be given under this Agreement shall be in writing and shall be either (a) delivered in person (with a signed acceptance), or (b) sent by United States Certified or Registered Mail, postage pre-paid, return receipt required, or (c) delivered by a nationally recognized courier service that obtains an acknowledgement of receipt, and, in each such instance, such notice, demand, request or other instrument shall be addressed at the address set forth in the heading of this Agreement or at such other address as either party may designate by notice given in accordance with this section.

11.     **Rules of Construction**  (a) Parties—The word "Owner" shall mean all parties who are owners, regardless of number. (b) Drafter—The fact that this Agreement was initially drafted by one party or the other shall have no bearing on its interpretation or construction. (c) Binding Effect—The terms of this Agreement shall extend to and be binding upon and inure to the benefit of the parties hereto, their administrators, executors, representatives, heirs, successors and permitted assigns. (d) Counterparts/Facsimile—This Agreement may be executed in any number of counterparts, each of which when so executed and delivered shall be deemed an original, but such counterparts together shall constitute but one and the same instrument. In addition, a facsimile copy of this Agreement containing a party's signature may be fully relied on to the same extent as an original. (e) Severability—In the event any provision of this Agreement, or its application to any person or circumstance, is held by any court having jurisdiction over any dispute arising hereunder to be invalid or unenforceable, then such court shall sever and/or reinterpret such provision so as to carry out the intent of the parties hereto in a valid and enforceable manner, and the invalidity or unenforceability of such provision within the jurisdiction of such court shall not affect the validity or enforceability of such provision in any other jurisdiction, and the remainder of this Agreement, including any reinterpretation of such provision, shall remain in full force and effect. (f) Governing Law—This Agreement shall be deemed to have been delivered to and made at Lexington, Kentucky, and the terms and provisions of this Agreement shall be interpreted in accordance with and governed by the laws of the Commonwealth of Kentucky, without regard to the principles of conflicts of law. (g) Attorney Fees—If either party to this Agreement brings an action to enforce the terms of this Agreement or to declare rights hereunder, then the prevailing party in the final judgment in any such action shall be entitled to recover from the other its costs and reasonable attorney's fees. (h) Survival—Unless otherwise specifically provided, all of the Owner's representations, warranties and covenants set forth in this Agreement shall be true upon the execution of this Agreement and shall survive expiration or termination of this Agreement. (i) Non-Cumulative—Except as specifically provided otherwise in this Agreement, no right or remedy conferred upon or reserved to either party by this Agreement is intended to be, nor shall be deemed to be, exclusive of any other right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy. (j) Entire Agreement—This Agreement and all exhibits hereto, if any, contains the complete and exclusive agreement between the parties hereto pertaining to its subject matter, and supersedes all prior and contemporaneous written and oral negotiations and agreements pertaining thereto. Each party hereby acknowledges and agrees that neither party, nor anyone acting on its behalf, has made any statement, promise, or agreement or has taken upon itself any engagement whatsoever, whether orally or in writing, in conflict with the terms of this Agreement, or that in any way modifies, varies, alters, enlarges, or invalidates any of the provisions hereof, or extends the term of this Agreement. No obligations of either party shall be implied in addition to the obligations expressed in this Agreement. (k) Amendment—This Agreement cannot be amended, modified or supplemented orally, but only by a subsequent written agreement signed by an authorized representative of all parties. (l) Execution—This Agreement shall not be valid until executed by or on behalf of all parties.

12.     **Auction of Property**   In the event that Owner decides to Auction the Property at any time during the Term of this Agreement, Block + Lot shall remain involved in the transaction and shall be entitled to such compensation as Owner shall agree. The Property shall be sold at auction on terms and conditions generally represented by an auction contract to be negotiated later between Owner and the auctioneer.

13.     **Other Terms and Conditions.  Owner discloses that the following may have or assert an interest in the Property:**

> a.      Andrew McCord has a lease for portions of the agricultural acreage for soybean cultivation. The McCord lease expires upon the earlier to occur of harvest of the existing soybean crop or March 1, 2022;

> b       Certain portions of the Property are subject to a month-to-month lease with AVF CBD, LLC, which lease is terminable by either party upon sixty (60) day notice: and

> c.      Certain contractors or sub-contractors have asserted mechanic liens against the Property, some of which have been filed in the Clark County Clerk's Office. Owner will cause the removal,

release or title insurance over any liens so as to ensure marketable title will be delivered to any purchaser as contemplated by this Agreement.

**IN WITNESS WHEREOF**, Block + Lot and Owner have signed and delivered, or have caused their authorized representatives to sign and deliver, this **Exclusive Marketing Agreement For The Sale Of Real Property**.

**BLOCK + LOT:**

BLOCK + LOT REAL ESTATE, LLC

By: _____

       ~~Peter Barr~~ Gregory Leverick

Title:    Partner

Date:    September 20, 2021

**OWNERS of 4274 Colby, LLC:**

101 ENTERPRISES, LLC

Name: _____

       William Hilliard

Title: Member of 101 Enterprises, LLC and Co-Manager of 4274 Colby, LLC

Date:  September 20, 2021

GENCANNA ACQUISITION CORP.

Name: _____

       Andrew G. Barnett

Title: CEO of GenCanna Acquisition Corp. and Co-Manager of 4274 Colby, LLC

Date:  September 20, 2021