**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| IN RE | |
| OGGUSA, INC. | CASE NO. 20-50133 |
| DEBTOR | |
| GENCANNA ACQUISITION CORP. | PLAINTIFF |
| V. | ADV. NO. 23-5036 |
| 101 ENTERPRISES, LLC, ET AL. | DEFENDANTS |

**MEMORANDUM OPINION**

The Debtor GenCanna Global, USA owned a 50% interest in 4274 Colby, LLC, a Kentucky limited liability company (the "Company"). The Plaintiff GenCanna Acquisition Corp. acquired the Debtor's interest in the Company in a bankruptcy sale of substantially all the Debtor's assets. Defendant 101 Enterprises, LLC owns the other 50% interest in the Company. Defendant William Hilliard was a co-manager of the Company and Defendants Kevin Murray and Gregory F. Martini own some or all of 101 Enterprises.

The Plaintiff initiated this adversary proceeding seeking, among other things, a declaratory judgment that it acquired a Member's governance and economic rights when it purchased the Debtor's interest in the Company. [ECF No. 1 (Count 1).] The Defendants concede the Plaintiff purchased an economic right to profits. But they argue the Plaintiff did not acquire the Debtor's governance rights based on application of Kentucky law and the terms of the Company's Operating Agreement.

The Plaintiff and Defendants filed cross-motions for summary judgment on Count 1. [ECF Nos. 10, 29, 31, 32.] A hearing was held on August 8, 2023, and the matter was submitted.

[ECF Nos. 36, 37.] The Plaintiff acquired the Debtor's Interest in the Company subject to the terms of the Operating Agreement, which limits transfers without the consent of the other Member. 101 Enterprises has not consented to admit the Plaintiff as Member, so the Defendants' motion for summary judgment is granted and the Plaintiff's motion for summary judgment is denied.

I.   **Background.**

   A.   **Formation of 4274 Colby, LLC.**

The Debtor and 101 Enterprises formed the Company to own real property and improvements at 4274 and 4330 Colby Road, Winchester, Kentucky. The Company leased the land and a building to the Debtor for use in its business (the "Lease").

The relationship between the Debtor and 101 Enterprises is described in the Company's Operating Agreement dated May 30, 2015. [ECF No. 10-2.] The Operating Agreement defines a "Member" as "each Person who initially acquired a Company Interest from the Company pursuant to this Agreement and each Person hereafter admitted to the Company as a Member as provided in this Agreement, but does not include any Person who has ceased to be a Member." A "Company Interest" or "Interest"

> means the interests of a Member or an assignee who is not admitted as a Member in the Company, including the right to any and all benefits to which such Member or assignee may be entitled in accordance with this Agreement and the Act [K.R.S. § 275.001 *et seq.*], and the obligations as provided in this Agreement and the Act.

The Operating Agreement refers to "Interest Holders" as Members and assignees of Interests in the Company who are not admitted as Members.

The Operating Agreement recognizes the Debtor and 101 Enterprises as initial Members. The various provisions of the Operating Agreement give the Members the right to manage the

Company and share in its profits. [*See id.*, § 6.1, Art. 4.] The Operating Agreement does not, however, allow the Members to freely transfer their Company Interests.

Section 5.3 of the Operating Agreement is titled Restriction on Transfer of Interests. Section 5.3 begins, "The parties have agreed that it is not desirable that any of the Company Interests be sold or transferred because the Members desire to provide for continuity of management of the Company." The section then provides that "no third-party becomes a Member or the holder of a Company Interest without consent of the Members holding at least seventy-five percent (75%) of the Interests". If consent is not given, the transfer is deemed void.

But an Interest Holder that receives an offer to purchase may sell its Company Interest pursuant to Section 5.3(b), provided the Company and other Interest Holders do not exercise their right of first refusal. Transfer of the Debtor's Company Interest was not an issue because 101 Enterprises acknowledged it did not object to the transfer of the Company Interest; the Plaintiff could become an Interest Holder but not a Member. [*Id.*, ECF No. 809.]

Admission of a new Member is governed by Section 5.5 of the Operating Agreement. Section 5.5(b) requires compliance with the consent requirement in Section 5.3(a). 101 Enterprises has not consented to Plaintiff's admission as a Member and has claimed the role of sole Member since the sale. [*See* ECF No. 1 (Complaint), Ex. E (December 2, 2020 resolution of members executed only by 101 Enterprises and claiming it is the sole member in the recitals); Ex. G (the signature line of the marketing agreement refers only to 101 Enterprises as a Member); Ex. P (October 10, 2022, resolution of members appointing new two managers claiming 101 Enterprises is the sole Member).]

## B. The Bankruptcy and Sale.

Three petitioning creditors filed an involuntary chapter 11 bankruptcy petition for the Debtor on January 24, 2020. [Case No. 20-50133, ECF No. 1.] The Debtor consented to the filing and the order for relief was entered on February 6, 2020. [*Id.*, ECF No. 94.] The Debtor then filed schedules that included its interest in, and dealings with, the Company. [*Id.*, ECF No. 246 (Schedules A/B: Assets – Real and Personal Property included the 50% ownership stake in the Company and the Lease; Schedule G: Executory Contracts and Unexpired Leases disclosed the Lease).]

The Debtor quickly established a structured sale process for substantially all assets. [*Id.*, ECF No. 304.] The Debtor listed the Operating Agreement and Lease as contracts it might assume and assign under 11 U.S.C. § 365. [*Id.*, ECF No. 490.] The Debtor scheduled a cure amount of $0 for each. [*Id.*]

The sale procedures set April 14, 2020, as the deadline to object to the cure amounts and April 21, 2020, for other objections to the assumption and assignment of the agreements. [*Id.*] The Company objected to the cure amount on April 10, 2020. [*Id.*, ECF No. 566.] 101 Enterprises also objected to the cure amount on April 10, but the objection was signed by Defendant Hilliard as Manager and not by legal counsel. [*Id.*, ECF No. 561.] So, 101 Enterprises was ordered to obtain counsel, or the objection was overruled. [*Id.*, ECF Nos. 561, 568.]

On April 27, 2020, the Debtor filed (i) a notice that MGG Investment Group, LP was the successful bidder and (ii) the assignment and assumption cure schedule for the draft Asset Purchase Agreement that still listed the Operating Agreement and Lease at $0. [*Id.,* ECF Nos. 682-83.] Both the Company and 101 Enterprises filed objections to the proposed sale and

4

revised cure notice on April 28, 2020. [*Id.*, ECF Nos. 696-97.] The Company reiterated its objection to the cure amount. [*Id.*, ECF No. 697.] 101 Enterprises, now acting through counsel, renewed its cure amount objection and opposed the transfer of the Debtor's rights as a Member without its consent. [*Id.*, ECF Nos. 696, 809 (collectively, the "101 Enterprises Objection").]

A sale hearing was held on May 6-7, 2020, and the sale was approved. [*Id.*, ECF Nos. 806-808, 814-815.] The order approving the sale was entered on May 19, 2020. [*Id.*, ECF No. 850 (the "Sale Order").] The closing of the sale to the Plaintiff, the designee of MGG Investments, occurred on May 29, 2020. [*See id.*, ECF No. 889.] The Debtor confirmed a reorganization plan on November 11, 2020. [*Id.*, ECF Nos. 1496, 1517.]

**C. The Adversary Proceeding.**

The Plaintiff filed the Complaint on March 29, 2023, and the Defendants timely answered. [ECF Nos. 1, 5.] Count 1 seeks a declaration that the Plaintiff is a Member of the Company pursuant to the bankruptcy sale (*i.e.*, both membership and economic rights). [ECF No. 1.] Counts 2-5 assert breach of fiduciary duty claims against the individual Defendants and 101 Enterprises. [*Id.*] These counts allege the Defendants are acting solely for the benefit of the owners of 101 Enterprises, which impairs the profits of the Interest Holders. [*Id.*]

The Defendants moved for withdrawal of the reference, which was denied by the United States District Court for the Eastern District of Kentucky. [ECF Nos. 8, 28.] The Defendants' motion to abstain was denied without prejudice. [ECF Nos. 12, 27.] Counts 2-5 are stayed pending a decision on Count 1. [*Id.*]

**II. Summary Judgment Standard.**

Summary judgment is only appropriate if there is no genuine issue of material fact. FED. R. CIV. P. 56 (incorporated by FED. R. BANKR. P. 7056). Cross-motions for summary judgment

5

are considered separately on their merits. *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800–01 (B.A.P. 6th Cir. 2007). Each movant has the burden to show no genuine issue of material fact exists and they are entitled to judgment as a matter of law. *Id.*

The parties rely on the bankruptcy record, including the Sale Order and the sale documents, the Company's Operating Agreement, and state and federal law to support their cross-motions for summary judgment. There are no disputed facts and summary judgment on Count 1 is appropriate.

**III. The Plaintiff is Not A Member in the Company.**

   **A. The Debtor's Interest in the Company Was Property of the Debtor's Estate.**

The Debtor's interest in the Company was property of the estate. 11 U.S.C. § 541(a) ("[A]ll legal and equitable interests" in prepetition property are assets of a debtor's estate.). This includes both the Debtor's governance rights and its economic right to profits as a Member of the Company.

101 Enterprises argues the Debtor only owned an economic interest because that is all Kentucky law recognizes as an asset for an interest in a limited liability company. 101 Enterprises arrives at this conclusion by tying together multiple provisions of the Kentucky Limited Liability Company Act. *See* KY. REV. STAT. §§ 275.250, 275.015(13), 275.195, 275.255, 275.260, 275.265(1), and 275.280(d)(2)-(3)).

The Kentucky Supreme Court does not interpret the Kentucky limited liability statutes to have this limited effect. *Spurlock v. Begley*, 308 S.W.3d 657, 660 (Ky. 2010) (recognizing a membership interest includes both governance and economic rights). Further, Kentucky law cannot sever a chapter 11 debtor's membership rights in a limited liability company so only its right to profit becomes property of the Debtor's estate. Any provision of state law that would

eliminate any portion of a debtor's ownership interest of a limited liability company because the debtor filed bankruptcy is not valid. 11 U.S.C. § 541(c); *In re Dixie Management & Inv. Ltd. Partners*, 474 B.R. 698, 701 (Bankr. W.D. Ark. 2011).

The same is true for any provision in the Operating Agreement that divests the Debtor of any portion of its ownership interest based on the bankruptcy filing. 11 U.S.C. § 541(c); *Klingerman v. ExecuCorp, LLC (In re Klingerman)*, 388 B.R. 677, 679 (Bankr. E.D. N.C. 2008) (section 541(c) prevents an operating agreement from converting a debtor's membership rights to a mere economic right upon the filing of a voluntary bankruptcy petition). Section 541(c) trumps any conflicting state or contract term affecting a debtor's ownership of a limited liability company. *Fursman v. Ulrich (In re First Protection, Inc.)*, 440 B.R. 821, 830 (B.A.P. 9th Cir. 2010); *In re B & M Land and Livestock, LLC*, 498 B.R. 262, 267 (Bankr. D. Nev. 2013).

The Debtor remained a Member after the bankruptcy was filed and retained both the economic and governance rights of a Member in the Company.[1]

**B. The Sale Order Does Not Bar the 101 Enterprises Objection.**

The Plaintiff contends the Sale Order was an *in rem* decision that forecloses 101 Enterprises' reliance on the consent requirement in the Operating Agreement. The Plaintiff also argues 101 Enterprises' position is an improper collateral attack on the Sale Order that is barred by the good faith finding and the principle of *res judicata*. The Sale Order did not resolve the 101 Enterprises Objection.

The Debtor notified 101 Enterprises of the potential transfer of its interest in the Company. [Case No. 20-50133, ECF Nos. 490, 682-83 (listing the Operating Agreement and Lease in contracts to assume and assign to Plaintiff).] 101 Enterprises objected to the proposed

---

[1] This decision does not address the rights of a debtor as a manager of a limited liability company.

transfer without its consent.  [*Id.*, ECF Nos. 561, 696, 809.]  *See also Horizons A Far, LLC v. Webber (In re Soderstrom)*, 484 B.R. 874 (M.D. Fla. 2013) (a member may object to the sale).

The Debtor opted to reserve all objections to assumption, assignment, and cure amounts until after the sale because the buyer would have 90 days to designate a contract for assignment.  [*Id.*, ECF No. 792, 792-1.]  Therefore, the 101 Enterprises Objection was not considered at the May 6-7 sale hearing.  The Sale Order entered May 19, 2020, confirms the 101 Enterprises Objection was reserved for later resolution.  [*See, e.g., id.*, ECF No. 850 at ¶¶ 2, 25.]

The Plaintiff for the first time argues the Sale Order does not reserve the 101 Enterprises Objection because the first filing was overruled by court order and all remaining filings were beyond the objection deadline.  *See* Part I.B. (setting out the timing of the filings).  It is fair to conclude the Debtor waived this argument.  An objection to the timing of the 101 Enterprises Objection is omitted from, and directly contrary to, the Debtor's express reservation of counterparty rights before the sale hearing.  [*See id.*, ECF No. 792-1, ECF No. 850 at ¶¶ 2, 25.]  Also, the Debtor was (and Plaintiff were) not harmed because it had a week to prepare before the sale hearing and the objection was continued anyway.

The Sale Order does not resolve the dispute because it expressly reserved the 101 Enterprises Objection for a later decision.

### C. The Plaintiff Acquired the Debtor's Interest Without Resolving the 101 Enterprises' Objection.

#### 1. The Debtor's Interest Transferred on August 27, 2020.

The final Asset Purchase Agreement called the Debtor's ownership stake in the Company the "Joint Venture" and included it as both a Purchased Asset and Excluded Asset.  [*Id.*, ECF No. 889-1.]  Both provisions referred to Section 6.10(b) to explain the dual listing:

> [T]his Agreement will not constitute an agreement to assign or transfer and will not affect the assignment or transfer of the equity interests in the Joint Venture until the earlier of (i) the date upon which the Transition Services Agreement is terminated; or (ii) within two Business Days following the Sellers' receipt of a written notice from the Purchaser directing that such equity interests be assigned or transferred to the Purchaser.

[*Id*.]

The sale closed May 29, 2020. [*Id*., ECF No. 889.] The Transition Services Agreement expired 90 days thereafter, August 27, 2020. [*Id*., ECF No. 889-2; *see also supra* Part III.B. (counterparty objections were not heard at the sale hearing because the buyer would have 90-days to designate agreements for assumption or rejection).] Therefore, the Plaintiff had until August 27, to designate the Debtor's interest in the Company as an Excluded Asset.

The record and arguments confirm the Joint Venture was not excluded, so the Plaintiff acquired the Debtor's interest in the Company on August 27 without resolving the 101 Enterprises Objection.

**2. 101 Enterprises Did Not Waive Its Objection.**

The Plaintiff suggests 101 Enterprises had an obligation to renew its objection at some point before confirmation or it was waived. There was no basis to obligate 101 Enterprises to renew its objection.

101 Enterprises satisfied its obligation to timely raise any objections or defenses prior to the transfer of the Joint Venture and any assumption and assignment of the Operating Agreement. *See Stanley Jacobs Prod., Ltd. v. 9472541 Canada Inc. (In re Thane Int'l, Inc.),* 586 B.R. 540, 546 (Bankr. D. Del. 2018); *see also Hazard Coal Corp. v. American Resources Corp. (In re Cambrian Holding Company, Inc.)*, Case No. 19-51200, Adv. No. 19-5023, 2020 WL 214746 (Bankr. E.D. Ky. Jan. 3, 2020). The Debtor had the burden to produce evidence to the contrary and show that § 365 applied to the transfer of the Operating Agreement. *In re Thane*

9

*Int'l, Inc.,* 586 B.R. at 546; *see also Georgia Ports Authority v. Diamond Mfg. Co., Inc.* (*In re Diamond Mfg. Co., Inc.*), 164 B.R. 189, 199 (Bankr. S.D. Ga. 1994) (explaining burden shifting under section 365). Neither the Debtor nor the Plaintiff took steps to satisfy the Debtor's burden of production and persuasion until now.

It is also unreasonable to suggest 101 Enterprises should have spoken up during the confirmation process. The Plan was filed to "set forth the means for satisfying claims against, and interests in, the debtors." [Case No. 20-50133, ECF No. 1414-1 (§ 1.01 of the Disclosure Statement).] By the time the final Disclosure Statement was approved, votes were solicited, and the Plan was confirmed in November 2020, the Debtor's interest in the Company had already transferred to the Plaintiff. *See* Part III.C.1. The Plan did not affect or address the transfer of the Joint Venture or preclude the Defendants' current arguments. [Case No. 20-50133, ECF No. 1431, 1517.]

**D. Enforcement of the Operating Agreement Was Not Affected by the Sale.**

The analysis to this point leaves open the question of the extent of the Plaintiff's ownership stake in the Company: is it solely an Interest Holder with a right to profits, or is it a Member that also has governance rights?

**1. The Bankruptcy Court Has Jurisdiction to Decide the Question Presented.**

A bankruptcy court has jurisdiction to interpret and enforce its own sale and confirmation orders. *In re HNRC Dissolution Co.*, No. 02-14261, 2018 WL 2970722, at *3 (Bankr. E.D. Ky. June 11, 2018), subsequently aff'd, 3 F.4th 912 (6th Cir. 2021). The Sale Order specifically reserved the bankruptcy court's jurisdiction:

> to decide any issues relating to the APA and this Sale Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Purchased Assets and any Assigned Contracts and all issues and disputes arising in connection with the relief

10

> authorized herein, inclusive of those concerning (i) the transfer of the Purchased Assets free and clear of all Liens (other than Permitted Exceptions) and (ii) the absolute conveyance of the Assumed Liabilities and Assigned Contracts.

[Case No. 20-50133, ECF No. 850 at ¶ 32.] The confirmation order and reorganization plan reiterated the retention of jurisdiction to resolve matters related to the sale, including a determination that a contract was or was not executory. [*Id*., ECF No. 1517 (*see* ¶ 24 and attached plan at Art. XI, ¶¶ 3, 21).

The issues raised in Count 1 of the Complaint and the cross-motions for summary judgment fit within the reservation of jurisdiction. Deciding the issues raised in the 101 Objection is the only way to reach a decision regarding Count 1. [ECF No. 1.] 101 Enterprises even acknowledged that "the Court should now address the previously reserved objections and hold that Plaintiff has only an economic interest in 4724 Colby." ECF No. 29 at p. 16.]

**2.  The Operating Agreement Is Not an Executory Contract.**

The Debtor structured the sale of the Company to include an assumption and assignment of the Operating Agreement and Lease pursuant to 11 U.S.C. § 365. If the Operating Agreement was assumed and assigned, it is arguable the consent requirement is an unenforceable anti-assignment provision. *See* 11 U.S.C. § 365(e) (*ipso facto* clauses are not allowed). The 101 Enterprises Objection argues the consent requirement is enforceable, so the nature of the transfer of the Operating Agreement remains an open issue. 101 Enterprises also argues that, if § 365 applies, the restriction on transfer of a Company Interest is a personal services restriction that is enforceable pursuant to § 365(c). *See infra* at Part I.B (describing the justifications for the consent requirement in Section 5.3(a)).

The Operating Agreement is not an executory contract and § 365 is not applicable. The Bankruptcy Code does not define an executory contract. The Sixth Circuit uses the

11

"*Countryman* approach" and the "functional equivalent" approach to determine whether a contract is executory. *In re Chattanooga Mem'l Park v. Still (In re Jolly)*, 547 F.2d 349, 350-51 (6th Cir. 1978); *In re Energy Conv. Dev., Inc.*, 621 B.R. 674, 706 (Bankr. E. D. Mich. 2020).

A contract is executory under the *Countryman* approach if "the obligations of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *Energy Conv. Dev., Inc.*, 621 B.R. at 706. The functional equivalent approach first examines whether the objectives of the contract have been accomplished. *Id*. If the objectives are already accomplished or if they cannot be accomplished through rejection, then the contract is not considered executory and subject to assumption or rejection. *Id*. The Supreme Court case of *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, supports both positions, looking at the level of performance and "whether the contract is a good deal for the estate going forward." 139 S. Ct. 1652, 1657 (2019).

The Operating Agreement is not executory under the *Countryman* approach because the Members do not have any outstanding substantive obligations. Other courts have considered contribution requirements or management duties as ongoing obligations. *See, e.g., Sheehan v. Warner (In re Warner)*, 480 B.R. 641, 651 (Bank. N.D. W.Va. 2012) (contribution obligation); *Matter of Daugherty Construction, Inc.*, 188 B.R. 607, 612 (Bankr. D. Neb. 1995) (management duties). The Operating Agreement provides that any future contributions are voluntary and the Members' management duties were delegated to the Managers. [ECF No. 10-2 at §§ 3.2, 6.1.] There is a chance the management duties might revert to Members, but the appointed Managers remained the same throughout the bankruptcy case and the Operating Agreement allows Managers to make unilateral decisions. Hypothetical, remote, or speculative obligations do not

12

support treating an operating agreement as an executory contract. *Meiburger v. Endeka Enterprises, L.L.C. (In re Tsiaoushis)*, 383 B.R. 616, 619 (Bankr. E.D. Va. 2007).

The same conclusion is reached if the Operating Agreement is analyzed under the functional equivalent approach. The Kentucky Limited Liability Company Act contemplates creation of an operating agreement to replace or supplement the provisions of the Act. *See, e.g.,* KY. REV. STAT. §§ 275.175, 275.255 and 275.265 (allowing the operating agreement to alter the statutory provisions addressing recognition of a member in a limited liability company). Unlike a lease, which contains rights and duties that make it an asset in and of itself, an operating agreement is simply a means of governing the relationship of the owners of an asset – an interest in a limited liability company. Once the Operating Agreement was executed, the parties' agreement on governance of their limited liability company is established and complete. *Consider In re Denman*, 513 B.R. 720, 723-24 (Bankr. W.D. Tenn. 2014) (the court would treat an operating agreement as a statutory instrument governing operation of the company that is not subject to assumption and assignment).

The Operating Agreement is not executory and § 365 does not apply. The Plaintiff acquired the Debtor's interest in the Company subject to the terms of the Operating Agreement.

## IV. Conclusion.

The Debtor and 101 Enterprises were free to structure their relationship as owners of the Company as they saw fit. *See* KY. REV. STAT. § 275.003(1) (The intent of the Kentucky Limited Liability Company Act is "to give maximum effect to the principles of freedom of contract and the enforceability of operating agreements."). They agreed to restrict voluntary transfers of a Company Interest and admission of a Member by requiring the consent of Members holding at least a 75% interest in the Company. [ECF No. 10-2 at § 5.3(a).] The Debtor's voluntary

decision to sell its Company Interest triggered the consent requirement in the Operating Agreement, not the bankruptcy proceeding. 101 Enterprises may enforce the consent requirement.

The Plaintiff is not entitled to judgment on Count 1 as a matter of law, so it is ORDERED that the Plaintiff's motion for summary judgment [ECF No. 10] is DENIED. The Defendants have shown they are entitled to judgment as a matter of law, so the Defendants' motion for summary judgment [ECF No. 29] is GRANTED. A separate order is entered to reflect this decision.

14

_____

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Thursday, August 31, 2023**
(grs)